```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
EMPIRE STATE CARPENTERS WELFARE,
ANNUITY AND APPRENTICE TRAINING
FUNDS, SOUTH CENTRAL DISTRICT          MEMORANDUM AND ORDER
COUNCIL OF CARPENTERS DEFINED          Docket No. 07-CV-2259
BENEFIT FUND, AND THE EMPIRE
STATE REGIONAL COUNCIL OF
CARPENTERS,

                Plaintiffs,

        -against-

CONWAY CONSTRUCTION OF ITHACA,
INC.,

                Defendant.
--------------------------------X
A P P E A R A N C E:

For the Plaintiffs:
    Virginia & Ambinder, LLP
    40 Broad Street, 7th Floor
    New York, New York 10004
      By: Martin C. Fojas, Esq.
          Michele A. Moreno, Esq.

For the Defendant:
    Coughlin & Gerhart LLP
    99 Corporate Drive
    Binghamton, New York 13904
      By: Joseph J. Steflik, Jr., Esq.
```

HURLEY, Senior District Judge

        Empire State Carpenters Welfare Annuity and Apprentice Training Funds, by Patrick Morin and Joseph Olivieri as Trustees, and South Central District Council of Carpenters Defined Benefit Fund, by David F. Haines and Frank Jones, as trustees (the "Funds"), and the Empire State Regional Council of Carpenters, by Patrick Morin, Business Manager (the "Union") (collectively the "Plaintiffs" or "Empire") filed the present action against

defendant Conway Construction of Ithaca, Inc. ("Defendant" or "Conway Construction") to recover unpaid fringe benefit contributions pursuant to a collective bargaining agreement ("CBA"). Both parties thereafter moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

By Orders dated March 15, 2012 and September 14, 2015, I denied Conway Construction's motion for summary judgment, granted Empire's application seeking the same relief, and directed entry of judgment awarding Empire $202,958.75 in damages stemming from Conway Construction's unpaid contributions to Empire's employee benefit funds. Defendant appealed to the Second Circuit Court of Appeals which, by summary order issued on September 28, 2016, vacated that judgment and remanded the matter for further proceedings consistent with its opinion. As explained by the Circuit:

> The District Court mistakenly concluded that Conway "points to no conduct on its behalf pre-April 2003 negating an intent to be bound by the 2001 Agreement, other than the fact that Conway consistently refused to sign the CBA." To the contrary, during discovery John Conway testified that "[a]s long as the funds were available from, let's say, the economy . . . I told Empire's union representatives' I'd stay as long as I could. And at that time when I could no longer support their people and cost, I'd have to terminate before I lost my company." A reasonable juror could construe this testimony to mean that Conway never manifested an intent to be bound by the 2001 CBA and, instead, informed the plaintiffs that he sought merely to compensate union employees at a certain rate

> until it was longer economically feasible to
> do so.

<u>Empire State Carpenters Welfare et al v. Conway Construction of Ithaca, Inc.</u>, 661 Fed. Appx. 97, 98-99 (2d Cir. 2016)(Summary Order).

Upon remand, a non-jury trial took place before me on August 21, 22, and November 20, 2017. Empire presented two witnesses, viz. John Conway ("Conway"), the vice-president of Conway Construction, and Scott Colton ("Colton"), a business representative for the Northeast Counsel of Carpenters. Plaintiff also introduced, pursuant to a stipulation, the deposition of Mick Pavlick ("Pavlick") a business agent of the Union. Conway Construction presented Conway as its witness, together with an affidavit of G. David Weaver ("Weaver").[1]

The purpose of this decision is to provide my Findings of Fact and Conclusions of Law as required by Federal Rule of Civil Procedure 52, with the core issue being "whether Conway's conduct manifested an intent to be bound to the terms of the 2001 [to 2006] CBA." <u>Id.</u> at 99.

### Format of Decision

By way of format, a brief, largely undisputed overview of the early interaction between the Plaintiffs and Defendant

---

[1] Empire did not object to the Weaver affidavit being received into evidence on hearsay grounds but questioned its relevance. That objection was overruled (Tr. at 108:4 to 110:5), and the item received as Def.'s Ex. A.

will be provided, followed by the contentions of the parties and the applicable law. Against that backdrop, detailed findings of fact on contested issues will be provided along with concomitant conclusions of law.

### Part I - Undisputed Facts

1. Conway Construction, which does "[m]ostly carpentry work [,] . . . demolition [and] renovation[s]," commenced operations in 1996. (Tr. at 21:23-25; id. at 24:18-21.)

2. In November 1996, Conway Construction signed a collective bargaining agreement with the Union, which had an effective date of June 1, 1995 and expired on April 30, 1998 (the "1995 CBA"). (Joint Pre-Trial Order ("PTO"), Art. VII, Stip. of Law and Fact, ¶ 6.)

3. For reasons nondecipherable from the trial record, the parties continued to abide by the terms of the 1995 CBA until mid-2001, i.e. beyond its April 30, 1998 scheduled expiration date.

4. Conway Construction was not a member of either the Construction Trade Employers of South Central New York Inc. ("CTE") or the Construction Industry Employees Association of South Central New York ("CIE") and did not designate its bargaining rights to the CTE or CIE. (Id., ¶ 7.)

5. On or about June 2, 2001, the Union signed a subsequent CBA with CTE, which was effective May 1, 2001 through

April 30, 2006.  (Id., ¶ 8.)

  6.  Conway Construction did not sign the 2001 CBA. (Id., ¶ 9.)

  7.  Conway Construction submitted monthly remittance reports to the Plaintiffs for the period from October 1996 through April 2003.  (Id., ¶ 14.)

  8.  Each of the remittance reports submitted by Conway Construction to the Plaintiffs between 1996 and 2003 contained a statement that "any signatory to this form is hereby bound to any and all applicable collective bargaining agreement with the Finger Lakes Carpenters Local No. 187 & No. 603 concerning wages, hours and working conditions for the applicable work and is hereby bound to any Funds' documents, trust agreements or other similar documents."  (Id., ¶ 15.)

## Part II  - Contentions of Parties

### A.  Empire's Position

  Empire contends that Conway's conduct makes it more likely than not - i.e. establishes by a fair preponderance of the credible evidence – that Conway Construction intended to be bound by the 2001 CBA though it never signed that agreement.  Such conduct includes "(1) contributing benefits and paying wages in accordance with the rates set forth in the CBA; (2) submitting numerous remittance forms to the Funds, each of which contained a clause stating that Conway [Construction] agreed to be bound by

the terms of the then-effective collective bargaining agreement; (3) agreeing to let the Funds audit its books and records in compliance with the 2001 CBA; and (4) utilizing the agreement's termination procedure in an attempt to terminate its obligations under the 2001 CBA." (Pls.' Proposed Findings of Fact and Conclusions of Law (Doc # 109) at 2 (internal quotation marks and citations omitted).)

Moreover, in Plaintiffs' view, Conway's trial testimony, provided as the principal and co-owner of Conway Construction, was often convoluted and inconsistent. Accordingly I am being asked — post trial and now as the trier-of-fact — to find that Plaintiffs have met their burden of proof and to "reinstate" the damage award in their favor set forth in my "September 21, 2015 Judgment." (Id. at p. 17.)

B. Conway Construction's Position

Defendant counters Empire's arguments thusly:

> Conway Construction never signed a successor collective bargaining agreement to the one it signed on November 14, 1996. In fact, it specifically refused to sign such an agreement on multiple occasions. When the initial agreement expired it merely agreed to pay the wages and fringe benefits which were area standard as long as it was practicable. . . .
>
> Conway Construction, in the instant matter, has specifically denied it intended to adopt the 2001-2006 collective bargaining agreement ("2001-2006 CBA"), paid no union wages or fringe benefits after April, 2003, did not receive any workers from Empire State

> after April, 2003, and never utilized any
> other portions of the 2001-2006 CBA. Conway,
> with no contradiction by any union witness,
> testified he consistently advised union
> representatives that he would only pay union
> wages and fringes for as long as the company
> could afford the cost . . . .

(Def.'s Post Trial Br. and Proposed Findings of Fact and Conclusions of Law (Doc # 110) at pp. 2-3.)

### Part III  - Applicable Law

a) It is undisputed that the burden of demonstrating that Conway Construction is bound by the 2001-2006 CBA rests with Empire.

b) When interpreting a collective bargaining agreement, "traditional rules of contract interpretation apply as long as they are consistent with federal labor polices."[2] <u>Aeronautical Indus. Dist. Lodge 91 of the Int'l Ass'n of Machinists & Aerospace Workers v. United Techs. Corp.</u>, 230 F.3d 569, 576 (2d Cir. 2000). "To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound. . . . That meeting of the minds must include agreement on all essential terms. . . ." <u>Stapelton v. Barrnett Crane Design & Engineering</u>, ___ Fed. Appx. ___, 2018 WL 985775 *2 (2d Cir. 2018)(citation and internal quotation marks omitted)(ellipses in

---

[2] Absent from the present record is any suggestion that application of "traditional rules of contract interpretation" would run afoul of "federal labor policies."

original).

c) The fact that no one from Conway Construction signed the subject argument — unlike its 1995 to 1998 counterpart — is not fatal to Plaintiffs' claim. Brown v. C. Volante Corp., 194 F.3d 351 (2d Cir. 1999).

d) A non-signatory employer's conduct alone may "manifest[] an intent to adopt, or agree to, [an] unsigned CBA[]", id. at 355, consistent with the principle that a "contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct." Hongxia Wang v. Englander, 2018 WL 1276854 *6 (S.D.N.Y. 2018)(internal quotation marks and citation omitted).

e) An employer's continuing fund contributions after the CBA has expired constitutes some, but often far less than dispositive evidence of his intent to be bound by a subsequent agreement. See Dugan v. R.J. Coleman Railroad Co., 344 F.3d 662, 668-69 (7th Cir. 2003). That may be true even if the CBA provides that such post-expiration payments renders "the employer, if not already a signatory . . . [,] a signatory party to the current applicable Collective Bargaining Agreement." Id. at 667.

In Dugan, the Seventh Circuit concluded that, although

-8-

a defendant continued to make contributions for its employees consistent with the terms of an expired CBA, such conduct, given the attendant circumstances, was insufficient to bind the employer to the successor CBA. Included in those "circumstances" was that the employer — like Conway — "had made clear its unwillingness to continue its relationship with the Union." Id. at 668. Given that scenario, Judge Posner, writing for the Court, labeled the continuing contributors evidence "weak" which "the district judge was not required to credit." Id.

Part IV – Discussion and Concomitant
Findings of Fact on Disputed Issues[3]

9. Union business agent John Gilles ("Gilles") provided Conway with a copy of the 2001-2006 CBA for his perusal. (Tr. 140:1-10.) Shortly thereafter, Conway advised Gilles "that the amount of money they were asking for over the next five years, knowing the work in the town and the manpower which I was having problem not getting qualified guys, and found out it wasn't much of an apprenticeship program going on, that if I were to sign that for the next five years, I would probably be out of business." (Id. at 140:17-23.)

10. During the conversation referenced in the paragraph 9, stated Conway "I wasn't going to sign it . . . but I

---

[3] In this part of the decision, i.e. Part IV, Findings of Fact 9 through 16 are provided. The reader is reminded that Findings of Fact 1 through 8 are set forth in Part I supra.

could pay the wages and fringes only, you know, maybe for another year."  (Id. at 140:25-141:3.)  In response, Gilles said "that would be fine."  (Id. at 141:5.)

11.  Later, "probably in the spring of 2001," Conway spoke to the Union's "new business agent" Michael Pavlick ("Pavlick").  Upon being told by Pavlick he "needed to sign this new agreement" Conway declined explaining "that there was no way [he] could sign it."  (Id. at 142:1-4.)

12.  Sometime in 2002, the Union tried again to have Conway agree to the terms of the 2001-2006 CBA.  This effort involved three union representatives, viz. "Pavlick, David Weaver and . . . some other guy," coming to the office of Conway Construction and endeavoring to persuade Conway "to sign the contract for the next four years or whatever was remaining on it."  (Tr. at 143:7-22.)  Once again, Conway categorically refused to sign the 2001-2006 CBA, adding to his previously voiced financial feasability concerns problems with the Union's apprenticeship program.  (Tr. at 143:19-144:9.)

13.  Pavlick's deposition transcript was received into evidence as part of Plaintiff's proof.  (See Nov. 19, 2017 Letter from Martin C. Fojas, Esq. (Doc # 106) at 1 and Tr. 135:7-20.)

14.  Pavlick explained that although no one on behalf of Conway Construction ever signed the 2001-2006 CBA, (Pavlick Dep. Tr. 44:14-17), Defendant did purchase fringe benefits for

-10-

its workers from "96 to sometime mid-2003."[4]  (Id. 44:3-8.)  It is undisputed that during the same period, Conway Construction was also paying union wage rates.

15.  To partially reiterate, Defendant never signed the 2001-2006 CBA and, on at least three occasions, Conway informed Plaintiffs that it would not do so with concomitant reasons being furnished.

16.  The evidence of implicit assent advanced by Plaintiffs is formidable and would certainly have carried the day but for the compelling and, I find, highly credible testimony of Conway.  His testimony demonstrates that Conway Construction never intended to, or did adopt the unsigned 2001-2006 CBA by conduct or otherwise.  Conway made it clear to Gilles at the outset that he "could not sign the agreement [but that he] would, as long as the customers [he] had could support it, . . . try for a year, year-and-a half [to] take care of [the] couple of carpenters still with [him]" by continuing to pay union rates and make fringe benefit contributions.  That is precisely what he did until May 1, 2003.

---

[4]  See Pl.'s Ex. 1, Jan. 31, 2003 Letter advising Plaintiffs, inter alia, that Conway Construction would make a decision by end of 1st quarters "whether or not [it] can maintain union rates . . . [and] remain a Union shop"; see also Pl.'s Ex. 2 (advising Plaintiffs that Conway Construction would "no longer be a union shop effective May 1, 2003.")  Parenthetically, Plaintiffs did not answer either letter.

## CONCLUSION

Based on the trial record, including the particularly compelling testimony of Conway, the Court concludes that Plaintiffs have failed to establish by a preponderance of the evidence their claim against Conway Construction for unpaid fringe benefit contributions.

The Clerk of Court is directed to enter judgment for Defendant and close the case.

SO ORDERED.

Dated: April 4, 2018
      Central Islip, New York

                                        _____
                                        DENIS R. HURLEY, U.S.D.J.